Curia, per Johnston, Ch.
This court is unanimously of opinion that this case cannot be put upon the nice distinction taken by the Chancellor. If the words employed, instead of controlling the division to be made among the legatees, be regarded as modifying the interests to be taken by them, (which Was the Chancellor’s view) our opinion is, that the construction in relation to the personalty is not to be drawn from the effect which the words employed in relation to the realty has upon that, but from the application of the same words to the personalty, just as if they had been repeated in the clause relating to it. Thé testator evidently refers to the disposition he had made of the realty, not with a view to alter the terms he had used, but to avoid the repetition of them. We would therefore read the will as if the first clause, recited in the decree, were amended by *139 inserting “ three-fifths of all my personal property,” after the “two plantations, Mount Pleasant and Mulberry Hill.” The effect of this construction would probably be, to let in, as purchasers, the issue of the grandson, William J. Albergottie, who may happen to survive him, upon the authority of the cases cited in the decree. But their interests being contingent and not vested, it might be doubted whether they could sustain their bill for the security they ask. According to the construction of which we are now speaking, the property is to go over, upon the death of William J. Albergottie, whenever that may happen, to his issue then alive, or, if there be jio such issue, then to Anthony and Thomas. The contingency of his leaving issue is to determine which of these alternative limitations is to take effect. The same contingency is to determine them; and they are therefore equally contingent, and' Anthony and Thomas would be just as much entitled to a bill for security as the plaintiffs. The doubt is whether either is entitled to it while William J. Albergottie is alive; and as yet, the right of neither has attached. There would, perhaps, have been less doubt, if both classes had united in the bill.
But the ground on which we shall determine the cause is, that the context of the will shews, that the contingency contemplated by the testator, was the death of William J. Albergottie before the period of division, and not afterwards; so that the other words employed by him were not intended to limit the estate after the division, but to direct among whom the division was to be made, according to the state of affairs which might then exist.
After directing the payment of his debts by the first clause, the testator by the second clause of his will required, “ that my estate, real and personal, should be kept together and not divided until my grandson, Thomas Albergottie, attain the age of twenty-one (except the six negroes left to my daughter, Mary Carney,) and the income thereof, (after paying an annuity to my daughter-in-law, Rebecca Albergottie) should be equally divided between my grand-children, William J. Albergottie, Anthony Albergottie, Mary Ann Slawson and Thomas Albergottie, or to the heirs of their body.”
Then follow the third and fourth clauses, imperfectly set out in the decree.
“ Thirdly, I give, devise and bequeath to my three grandsons, William J. Albergottie, Anthony Albergottie and Thomas *140 Albergottie, my two plantations, Mount Pleasant* and Mulberry Hill, share and share alike, and to the heirs of their body lawfully begotten, from thenceforth and forever; and should my grandson, William J. Albergottie, die, leaving no issue, then in that case to be divided between Anthony Albergottie and Thomas Albergottie ; and should my grand-son, Anthony Albergottie, die, leaving no issue, then in that case to be divided between William J. Albergottie and Thomas Albergottie; and should my grandson, Thomas Albergottie, die, leaving no issue, then in that case to be divided between William J. Albergottie and Anthony Albergottie.”
“ Fourthly, I give and bequeath three-fifths of all my personal estate,” (fee. as recited in the decree.
It seems to me very plain that the testator’s intention was that, when the period of division arrived, the property should be divided between the three grand-sons, if all were then alive ; that the issue of any of them who might have previously died should stand in his place; but if either of them were dead leaving no issue, then the property was “ to be divided” between the other two.
The division relates to the whole property. It is not a limitation over of the shaie of William J. (fee. — the share to be divided between the survivors — but a direction to divide the whole property according to the circumstances described' in the will. After the division the property is to go absolutely to those to whom it is to be allotted. The case shews that the youngest grandson, Thomas, attained majority — the property was divided, and William J., being alive, received his proportion: and we think he took it absolutely.
It has been argued against this view of the case, that this interpretation does not satisfy the terms of the fourth clause, which directs that the personalty shall be divided not only “ in the manner and form,” but “ with the same restrictions” as are “ mentioned respecting my real estate.” From the word “ restrictions” it is inferred that some modification must have been intended of the interests or estates which were to pass under the division. But the restrictions were upon the mode of division. This clause (the 4th) directs the three fifths of the personalty to be divided among the three grandsons ; but as the previous clause had, in certain contingencies, directed that the realty, which was also given to the three, should be divided between two ; it was thought necessary to declare, that the division of the personalty also, should, under the *141 same circumstances, be restricted to the two. The fifth clause has also been commented on as opposed to the construction we have adopted. In this clause the testator says, “ I leave to my daughter, Mary Carney (in lieu of her share of the income of my plantations) the use of the following negroes, viz .- Titus,” (Sic., “ and at the division of my personal property as aforesaid, the use of one fifth of all my personal property during her natural life ; and after her death to return back and be divided between my four grandchildren, in the same manner and form, and with the same restrictions as the personal property before recited.”
I perceive nothing in this justly calculated to affect our construction. The period of ultimate division as to this fifth is different from that appointed as to the three fifths given by the third and fourth clauses. It may admit of a doubt, which it would be improper to determine now, whether the ultimate division of this fifth is to be made according to the condition of the legatees at the death of Mary Carney, or at the periodo^iis^^tsfe-d^vision. But in either case the restriction is upon /pi^$^^d£^yfeion. We concur, therefore, with the chancellor Jjn the result ofrii| decree, and is ordered that the appeal be disMg^f SCHOOL 5
Johnson and Dunkin, CC. concurredij